**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

SANDRA LEAH HELTON, :

    Plaintiff, :

vs. : CA 06-0670-C

MICHAEL J. ASTRUE, :
Commissioner of Social Security,
                                      :
    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. §1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 23 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case . . . and order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 24 (order of reference)) Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's proposed report and

recommendation, and the parties' arguments at the July 12, 2007 hearing before the Magistrate Judge, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to bipolar disorder, a personality disorder and lumbar degenerative disc disease. The Administrative Law Judge (ALJ) made the following relevant findings:

> 3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. The undersigned finds the claimant's allegations regarding his (sic) limitations are not totally credible.
>
> 6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 416.927).
>
> 7. The claimant is 35 years old, a "younger individual between the ages of 18 and 44".

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 23 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

> [8.] The claimant has an 8th grade or "limited" education.
>
> [9.] The claimant has the following residual functional capacity: light work.
>
> [10.] Based on vocational expert testimony, the claimant's past relevant work as a convenience store cashier did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 416.965).
>
> [11.] Based on vocational expert testimony, the claimant's medically determinable impairments do not prevent the claimant from performing her past relevant work.
>
> [12.] The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(e)).

(Tr. 28-29) The Appeals Council affirmed the ALJ's decision (Tr. 4-6) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005.

Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past relevant work as a convenience store cashier, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

Although the claimant bears the burden of demonstrating the inability to return to her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d

---

[2] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

578, 581 (11th Cir. 1987) (citations omitted). Social Security Ruling 82-61 recognizes three possible tests for determining whether or not a claimant retains the capacity to perform her past relevant work. They are as follows:

> 1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc.[3]
>
> 2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.
>
> 3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.[4]

Under § 404.1520(e) of the Commissioner's regulations, a claimant will be found to be "not disabled" when it is determined that he retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national

---

[3] As recognized in the ruling, use of this test is likely to be "fallacious and insupportable" because "[w]hile 'delivery jobs,' 'packaging jobs,' etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge."

[4] The Dictionary of Occupational Titles' descriptions can be relied upon to define the job as it is usually performed in the national economy.

economy. SSR 82-61.

In this case, the ALJ relied upon test three above to determine that the claimant can perform her past relevant work as a convenience store cashier. (*See* Tr. 27 ("Based upon the undersigned's review of the medical evidence and evaluation of the claimant's symptoms, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform light work activity. To determine if the claimant can perform her past relevant work, the Administrative Law Judge obtained the testimony of Ms. Jody P. Skinner, who testified as an impartial vocational expert. Ms. Skinner testified that the claimant's past relevant work was performed at the light level of exertion and the semiskilled level of ability. The Administrative Law Judge asked the vocational expert to consider that the claimant's testimony was credible together with the limitations set out in Exhibits 5-F and 6-F and testify if an individual could perform any of the claimant's past work. Ms. Skinner testified that a hypothetical individual would be able to perform the claimant's past work as a convenience store cashier. She testified that Dr. Fletcher's report[] indicates she would not be able to stand for long periods of time but that could be accommodated in a cashier position."))

Section 404.1520(e) of the Commissioner's regulations requires a

review and consideration of a plaintiff's residual functional capacity and the physical and mental demands of the past work before a determination can be made that the plaintiff can perform his past relevant work.  Social Security Ruling 82-62 provides that evaluation under § 404.1520(e) "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his  . . . PRW to determine whether the individual can still do that work."  *See also Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (to support a conclusion that a claimant "is able to return to her past work, the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments").

> The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled."
>
> .   .   .
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision.  Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

> Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work). Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

SSR 82-62. In finding that a claimant has the capacity to perform a past relevant job, the decision of the Commissioner must contain among the findings, a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation. *Id.*

In this case, the plaintiff contends that the ALJ erred in rejecting evidence of a severe bipolar disorder causing marked limitations on her ability to work and in failing to give determinative weight to the opinion of a certified nurse practitioner. While the Court cannot find that the ALJ erred in failing to

give determinative weight to the opinion of a certified nurse practitioner, *see, e.g., Hardin v. Barnhart*, 468 F.Supp.2d 238, 249 & 250 (D. Mass. 2006) ("The hearing officer properly afforded little weight to the opinions of Hardin's nurse practitioner, Karen Caddell. . . . A 'treating source' is defined as a 'physician, psychologist, or other acceptable medical source' who treats the claimant. . . . Similarly, 'medical opinions' are defined as 'statements from physicians and psychologists or other acceptable medical sources.' . . . As such, Nurse Caddell is not a physician, psychologist, or other acceptable medical source as defined by the Regulations. . . . Thus, Nurse Caddell was not a treating source, and her opinion was not entitled to greater weight."); *Nichols v. Commissioner of Social Security Administration*, 260 F.Supp.2d 1057, 1065 & 1066 (D. Kan. 2003) ("Ms. Heller, standing alone as a nurse practitioner, is not an acceptable medical source. The ALJ was therefore not required to apply the treating source rule when weighing her opinions. Plaintiff asserts, however, that the Medical Source Statement was also signed by Dr. Thompson, who is a licensed physician. Plaintiff thus argues that the opinion contained in the Medical Source Statement came from an 'acceptable medical source,' and the ALJ was required to give it controlling weight. The Court does not agree. . . . There is no evidence in the record indicating that Ms. Heller was working

closely under the supervision of Dr. Thompson or that she had consulted with Dr. Thompson during the course of Plaintiff's treatment. Moreover, there is nothing in the record indicating that Plaintiff was ever seen or treated by Dr. Thompson. Finally, there is nothing in the Medical Source Statement indicating that it was based on any evaluation conducted by Dr. Thompson as required by 20 C.F.R. § 416.913(a)(6) (1999). As noted above, that regulation requires the report of an interdisciplinary team to contain more than just the signature of the acceptable medical source-it requires the report to contain *the evaluation* of the acceptable medical source. Here, the record show[s] only the co-signing of the report by Dr. Thompson. The mere co-signing of the report does not create an interdisciplinary team within the meaning of the regulation. Consequently, the opinions contained in the Medical Source Statement can only be attributed to Ms. Heller. As a nurse practitioner, she is not an acceptable medical source, and the ALJ was not required to give her opinions controlling weight. Instead, the ALJ had discretion to determine what weight to give Ms. Heller's opinions based on all the evidence before him."), the Court does find that it cannot affirm the decision denying benefits because there is not substantial support in the record for the determination that Helton can perform the mental demands of her past relevant work as a convenience

store cashier. In fact, the evidence explicitly establishes that plaintiff has carried her burden of proving that she cannot perform her past relevant work as a convenience store cashier.

Although the plaintiff in this case has some physical limitations as a result of low back problems (*see, e.g.,* Tr. 122-151 & 177-181), this is "at bottom" a mental impairment case (*see* Tr. 153-176, 182-199 & 211-219). To be sure, in recognition of plaintiff's bipolar and personality disorders the ALJ in this case followed the Eleventh Circuit's recent decision in *Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005) and incorporated into his decision the Psychiatric Review Technique Form ("PRTF") mode of analysis. *See id.* at 1214.[5] In fact, with respect to the degree of functional limitation resulting from plaintiff's bipolar disorder, the ALJ's functional analysis tracks that of the non-examining, reviewing physician, Dr. Donald Hinton. (*Compare* Tr. 26-

---

[5] The Commissioner's regulations specifically provide that the PRTF or functional analysis contained therein must be completed before an ALJ makes the determination about whether a mental impairment is severe or not severe. 20 C.F.R. § 416.920a(d)(1) & (2) (2007) ("After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s). (1) If we rate the degree of your limitation in the first three functional areas [activities of daily living; social functioning; and concentration, persistence, or pace] as 'none' or 'mild' and 'none' in the fourth area [episodes of decompensation], we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . . (2) If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder.").

27 *with* Tr. 192)[6] However, in questioning the vocational expert ("VE") during the administrative hearing on July 12, 2006, the ALJ neither makes mention of Hinton's PRTF[7] nor did he incorporate any mental limitations[8] in the hypothetical posed. The ALJ's wholesale failure to incorporate any mental limitations in the hypothetical posed to the VE and/or his failure to incorporate Hinton's PRTF and mental residual functional capacity analysis into the hypothetical constitutes reversible error. *See Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985) ("'[U]nless there [is] vocational expert testimony concerning the availability of jobs for a person with the claimant's educational

---

[6] Because the ALJ rejected the mental residual functional capacity assessment completed by the nurse practitioner in this case (*compare* Tr. 28 *with* Tr. 214-215), he relied solely upon Hinton's PRTF to perform the analysis required by *Moore, supra*.

[7] The hypothetical posed to the VE upon which the ALJ relies to establish that plaintiff can perform her past work as a convenience store cashier is based "the facts found in Exhibits 5F and 6F[,]" (Tr. 246; *see also* Tr. 247 (response by VE)) Exhibit 6F was Dr. Raymond Fletcher's March 10, 2005 physical examination of the claimant, same establishing plaintiff's ability to perform the requirements of light work with some limitations (Tr. 177-179), and Exhibit 5F was Dr. Kimberly Whitchard's March 3, 2005 mental evaluation of plaintiff in which the psychologist diagnosed a bipolar disorder and a personality disorder (Tr. 175). As part of her evaluation of the plaintiff, Whitchard did not complete a mental residual functional capacity assessment. Not surprisingly, therefore, in response to the ALJ's hypothetical, the VE focused upon plaintiff's physical ability to perform her past relevant work. (Tr. 247 ("Q  And why do you reach your conclusion that way? A  6F from Dr. Fletcher indicates a physical demand work level of light, which is what she was performing before. She'll need to not stand for prolonged periods of time but that could be accommodated in a cashier position."))

[8] *See Phillips v. Barnhart*, 357 F.3d 1232, 1242 n.11 (11th Cir. 2004) ("Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all other physical limitations that are not included in the seven strength demands.").

level, work skills and experience and physical [and mental] limitations, the decision of the ALJ, based significantly on the expert testimony, would be unsupported by substantial evidence.'"); *cf. Querido v. Barnhart*, 344 F.Supp.2d 236, 243 (D. Mass. 2004) ("At Querido's hearing, a vocational expert, Albert Sadella [] was asked by the Administrative Law Judge to consider a hypothetical claimant of Querido's age, education, and work experience, who could perform light exertional work with no concentrated exposure to dust, smoke, gases, or airborne pulmonary irritants, and who was limited by functional restrictions contained in Dr. Gonzalez's report of November 6, 2001. [] In his report, Dr. Gonzalez had observed 'moderate' limitations in Querido's ability to relate to others, to carry out daily activities, to understand, carry out, and remember instructions, to respond to customary work pressures, and to perform complex and varied tasks, and 'mild' limitations in her ability to respond appropriately to supervision and co-workers and to perform simple and repetitive tasks. [] The Administrative Law Judge asked the vocational expert whether this hypothetical claimant would be able to perform any of the work performed by Querido in the past.").

It is clear to the Court that had the ALJ incorporated Hinton's PRTF analysis and mental residual functional capacity assessment into the

hypothetical posed to the VE, the VE, like a disability examiner in this case (Tr. 95), would have responded that plaintiff is unable to perform the mental requirements of her past work as a convenience store cashier given Hinton's finding that plaintiff's contact with the general public should be infrequent (Tr. 198). Based not only upon the DOT descriptions of cashier jobs most similar to that of a convenience store cashier, that is, DOT 211.462-010,[9] 211.462-014,[10] and 311.472-010,[11] but common sense as well, it is clear that work as a convenience store cashier requires the ability to engage in frequent contact with the general public (*see* Tr. 95 (RFC limitation that rules out job of cashier as actually performed and as performed in the national economy is infrequent contact with the general public)). Because nothing in the medical records contradict this limitation found by Hinton and the ALJ did not reject same, the Court determines that this limitation conclusively carries the plaintiff's burden of establishing that she cannot perform the mental demands of her past relevant work as a convenience store cashier. *Cf. Hackett v. Barnhart*, 395

---

[9] "Receives cash from **customers** or employees in payment for goods or services and records amounts received[.]" *Id*. (emphasis supplied).

[10] "Operates cash register to itemize and total **customer's** purchases in grocery, department, or other retail store[.]" *Id*. (emphasis suppplied).

[11] "Serves **customer** of fast food restaurant: Requests **customer** order and depresses keys of multicounting machine to simultaneously record order and compute bill." *Id*. (emphasis supplied).

F.3d 1168, 1171-1172 (10th Cir. 2005) ("With regard to her mental limitations, the ALJ found that Plaintiff 'retains the attention, concentration, persistence and pace levels required for simple and routine work tasks.' [] She can perform work under general supervision, 'but needs to work in a low stress environment and avoid direct contact with the general public and have only occasional interaction with co-workers.' [] Plaintiff is moderately restricted in 'following work rules and responding to supervision.' [] At step four the ALJ also determined that Plaintiff could not return to her past relevant work as a checker/cashier, wedding coordinator, adult health aide, occupational therapist, or director of occupational therapy."). On remand, therefore, the ALJ must satisfy his burden of establishing that other jobs exist in the national economy which plaintiff can perform given her physical and mental impairments and limitations.

## CONCLUSION

The Court **ORDERS** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision.  The remand pursuant to sentence four of § 405(g) makes the plaintiff

a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 27th day of July, 2007.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**